FILED
04 APR 19 PM 2: 18
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY THIGPEN, et al., } | |
| } | |
| Plaintiffs, } | |
| } | |
| v. } | Case No.: CV 02-P-572-S |
| } | |
| DELTA AIR LINES, INC., } | |
| } | |
| Defendant. } | |

ENTERED
APR 19 2004

## MEMORANDUM OPINION

The court has before it Defendant's Motion for Summary Judgment (Doc. # 27) filed April 29, 2003, which was pending when this court received the case by reassignment on October 17, 2003. (Doc. # 33.) Pursuant to the court's April 13, 2004 order, (Doc. # 47), the motion was deemed submitted, without oral argument, on April 13, 2004.[1] For the reasons outlined below, there are no disputed issues of material fact and Defendant has demonstrated it is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is due to be granted.

**I.  Procedural History**

Plaintiffs commenced this action on January 11, 2002 by filing a complaint in the Circuit Court of Jefferson County. (Doc. # 1, Ex. A.) Delta Air Lines, Inc. ("Delta") removed this action on the basis of diversity jurisdiction on March 5, 2002. (Doc. # 1.) Plaintiff Anthony Thigpen contends that Delta's alleged conduct constitutes negligence and wantonness, and Plaintiff Veronica Thigpen seeks damages for loss of consortium. (Doc. # 1, Ex. A.) Delta's motion for summary

---

[1] Although the court initially granted Defendant's request for a hearing and set this case for oral argument on April 14, 2004, (Docs. # 36, 28), upon receipt of a request for continuance of the hearing, the court cancelled the hearing and determined that, having reviewed the parties' revised submissions, oral argument was no longer necessary.



judgment asserts that no genuine issue of material fact exists and that Delta is entitled to judgment as a matter of law. (Doc. # 27.)

The parties have each filed briefs and submitted evidence in support of their respective positions concerning the pending motion for summary judgment.[2] In support of its motion, Delta filed a memorandum of law, (Doc. # 39), statement of facts (Doc. # 40), and evidentiary submission. (Doc. # 41.) Plaintiffs filed an opposition brief (Doc. # 42), statement of facts (Doc. # 44), and evidentiary submission. (Doc. # 43.) In reply, Delta filed a brief (Doc. # 46) and a reply to the additional facts set forth by the Plaintiffs. (Doc. # 45.)

## II. Legal Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See*

---

[2] Although the parties had submitted briefs prior to the reassignment, this court requires all summary judgment submissions to comply with Exhibit A to the court's Scheduling Order and, accordingly, the parties resubmitted their previously filed submission in accordance with Exhibit A.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to *affirmatively* show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method

requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

### III.    **Relevant Undisputed Facts**[3]

Plaintiff Anthony Thigpen is employed by The Birmingham Airport Authority ("BAA") as a painter. (Thigpen Dep. at 19:7-9; 17:13-15.) Through the use of manuals, videos and bi-annual classes, BAA has trained Thigpen on issues of safety, including proper and safe use of ground vehicles, ramp, runway and taxiway safety, passenger safety, and building safety. (Thigpen Dep. at 19:13-21; 20:4-5; 24:19-23; 25:1-2; 27:17-18; Thigpen Dep. Ex. 4 "Airfield Driver Rules and Regulations.") Thigpen knows that, when he is on runways and taxiways, he is to be on the look-out for debris and airplanes always have the right-of-way. (Thigpen Dep. at 20:8-12; 25:3-7)

The portion of the taxiway known as the "taxiway proper" is bordered by double yellow lines on each side and has a single yellow line down its center. (Thigpen Dep. 42:3-5; Def.'s Ex. 7 to

---

[3] If facts are in dispute, they are stated in the manner most favorable to the Plaintiffs. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). All evidentiary materials cited in this section are exhibits to Doc. # 41.

Dep. of Thigpen.) It is defined by BAA as "that portion of the movement area used for surface maneuvering of aircraft to transition on the Airport Operations Area." (Thigpen Dep. Ex. 4 "Airfield Driver Rules and Regulations, Movement Area § 1.9.")  The "taxiway safety area" is located on either side of the double yellow lines. (Def.'s Ex. 7 to Dep. of Thigpen.) It is defined by BAA as that area "as required for designed aircraft use classification under the Advisory Circulars." (Thigpen Dep. Ex. 4 "Airfield Driver Rules and Regulations, Movement Area § 1.10.") The taxiway safety area is pavement, and it ends where the grass begins. (Def.'s Ex. 7 to Dep. of Thigpen; Pls.' Ex. 1, 12 to Dep. of Perkins.)

BAA retained Surface Pro, Inc. ("Surface Pro") to remove the old double yellow lines delineating the edge of the taxiway proper and the beginning of the taxiway safety area. (Thigpen Dep. at 35:5-8; 37:20-22; 38:16-19.)  Thigpen was charged with the task of overseeing the employees of Surface Pro to ensure that they were removing the correct paint lines. (Thigpen Dep. at 38:16-22.)

On September 27, 2000, Thigpen was asked by his supervisor to assist three contractors from Surface Pro in the removal of certain painted lines from the surface of the airport taxiway "Alpha." (Thigpen Dep. at 35:5-8.) To remove the paint, the contractors used a machine designed to eject metal beads at high speed. (Thigpen Dep. at 36:16, 20-23; 38:23-39:2.) In order to move the machine, it had to be loaded onto Surface Pro's panel truck. (Thigpen Dep. at 44:18-19; 46:23-47:9.) On the morning of September 27, the contractors moved their panel truck, with the machine loaded on it, into the taxiway safety area. (Thigpen Dep. at 46:2-11.) The truck remained in the taxiway safety area for five to ten minutes while Thigpen and the contractors were surveying the immediate area to identify and remove any debris. (Thigpen Dep. at 47:19-48:8.) During that time, Thigpen

noticed that an airplane, operated by Delta Air Lines, Inc. and piloted by Captain Steve Perkins, was taxiing toward them on taxiway Alpha. (Thipgen Dep. at 49:13-18; Ans. of Def. to Pls.' Interrog. No. 6; Ans. of Def. to ¶ 3 of Compl.)

In response to the approaching airplane, Thigpen instructed the contractors to move their panel truck toward the grass. (Thigpen Dep. at 30:19-31:5; 55:8-14.) Thigpen and one of the Surface Pro employees then boarded the back of the truck while another Surface Pro employee moved the truck toward the grass. (Thigpen Dep. at 55:22-56:6.) The two left tires of the Surface Pro panel truck were parked on the grass, although the two right tires were still on the pavement of the taxiway safety area.[4] (Thigpen Dep. at 61:13-15.) It was Thigpen's decision not to move the truck entirely onto the grass. (Thigpen Dep. at 66:17-20.) After the truck came to a stop, Thigpen remained inside the back of the truck. (Thigpen Dep. at 63:14-21.) He did not endeavor to see if the airplane would clear the truck. (Thigpen Dep. at 63:18-64:7.)

Prior to entering Alpha, Captain Perkins had been warned by the BAA tower that there was activity on Alpha. (Perkins' Dep. at 55:7-14.) Perkins first saw the Surface Pro vehicle at a distance of 300 yards. (Perkins' Dep. at 58:12-17.) Perkins testified that he slowed his plane down and steered to the left of the yellow centerline. (Perkins Dep. at 68:10-14; 68:21-23.)[5] Perkins testified

---

[4] Delta disputes that any portion of the truck was on the grass and maintains that the truck was parked entirely on the pavement at the time of the collision. (Perkins Dep. at 67:20-68:5.) Delta concedes this dispute is immaterial, however, and adopts the Plaintiffs' version for purposes of summary judgment only. (Doc. # 39.)

[5] Plaintiffs apparently dispute the portion of Perkins' testimony related to his observations and actions on the day of the accident. The only reason given for the alleged dispute is: "Pursuant to F.R.C.P. 56(f), Additional Discovery is Needed." (Doc. # 44.) Plaintiffs did not comply with the requirements of Rule 56(f), however, because Plaintiffs never submitted an affidavit to demonstrate "that [Plaintiffs] cannot for reasons stated present by affidavit facts essential to justify [their] opposition." Fed. R. Civ. P. 56(f); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Plaintiffs

that he cannot see his wingtips in that aircraft, but that he believed he would clear the truck. (Perkins Dep. at 72:16-17; 73:12-15.)[6] The wing of the plane struck the right side of the truck positioned on the pavement and within the taxiway safety area. (Thigpen Dep. at 31:8-10, 15; 61:14-15; 82:11-13; 83:6-7; Thigpen Dep. Exs. 5-10, 12.) Upon impact, Thigpen claims his waist was momentarily pinned between the equipment in the truck and its side panel and that he felt a pain in his lower back. (Thigpen Dep. at 70:7-14; 82:11-15.)

A physician diagnosed Thigpen with having suffered a contusion or bruise and Thigpen was off work for approximately 3 months. (Thigpen Dep. at 87:17-19; 88:7-10.)[7] After his return to work in December 2000, Thigpen remained on light-duty work until August 2002 when he underwent back surgery. (Thigpen Dep. at 92:17-93:4.) Thigpen returned to sedentary work in March 2003 and has now reached maximum medical improvement. (Dr. Michael Dep. at 19:16-18; 27:9-14.)

---

may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, particularly in this case where ample time and opportunities for discovery have already lapsed. *Securities and Exchange Commission v. Spence & Green Chemical Co.*, 612 F.2d 896 (5th Cir. 1980). Accordingly, the court will accept the portion of Perkins' testimony addressed to his observations and actions because Plaintiffs have not demonstrated a serious issue of fact as to Perkins' credibility. *Curl v. International Business Machines Corp.*, 517 F.2d 212, 213-214 (5th Cir. 1975).

[6] *See* discussion *supra* note 5. Perkins' testified that it is customary in the airport industry for ground personnel to communicate by hand signals to pilots to indicate whether they have wingtip clearance and that, on the day of the accident, the person standing in between the truck and plane did not signal to Perkins or his co-pilot that the plane's right wing would not clear the truck. (Perkins Dep. at 72:15-19; 73:5-7.) Plaintiffs request additional discovery in order to see if they can dispute these facts. However, their request is not accompanied by a Rule 56(f) affidavit and, therefore, the court accepts Perkins' testimony as undisputed.

[7] The day after the accident Thigpen began having numbness in his feet, calf and foot and began having tingling in the bottom of his left foot. (Thigpen Dep. at 71:15-23; 72:2-7.)

After the accident, the Federal Aviation Administration ("FAA") conducted an investigation and issued a warning letter to BAA. (Thigpen Dep. at 80:10-81:9; Doc. # 27, Ex. H "Certified Copy of FAA Warning Letter.") The letter of warning states in part:

> At 10:35 A.M., September 27, 2000, a Delta Airlines MD-88 struck a maintenance vehicle parked in the safety area of taxiway A. Investigation of the matter revealed that maintenance equipment and personnel were in the safety area of taxiway A. This situation is contrary to section 139.329(b) of Federal Aviation Regulation Part 139 which in part states, ". . .each certificate holder shall establish and implement procedures for the safe and orderly access to, and operation on, the movement area and safety areas by ground vehicles. . ."
> The operational procedures for this maintenance project were not adequate and serious consequences may have resulted. All future construction and maintenance procedures must ensure that all equipment and personnel are not in the safety area to allow normal aircraft operations on the runway.

(Doc. # 27, Ex. H.)

Thigpen has now filed suit against Delta,[8] asserting state law claims of negligence and wantonness. (Amend. Compl. ¶¶ 5-9.) Thigpen's wife, Veronica Thigpen, has asserted a loss of consortium claim against Delta. (Id. ¶¶ 11-12.)

### IV. Applicable Substantive Law and Discussion

Delta has moved for summary judgment on all claims alleged by Plaintiffs. The court will address each claim separately.

#### A. Negligence

To prove a claim of negligence, Thigpen must demonstrate a duty on the part of Delta toward Thigpen, breach of that duty, proximate causation and damages. *Martin v. Arnold*, 643 So. 2d 564,

---

[8] Thigpen also sued Captain Perkins, but agreed to dismiss him when Delta admitted in its Answer that the doctrine of *respondeat superior* applied to this occurrence.

567 (Ala. 1994). If Thigpen was contributorily negligent, his claim is entirely barred. *Tombrello v. Copeland*, 497 So. 2d 1124, 1126 (Ala. 1986). Delta claims that Thigpen's negligence claim fails both because he was contributorily negligent and because Delta's pilot did not breach any duty toward Plaintiffs. With respect to the contributory negligence argument, Delta presents three alternative bases for finding that Thigpen was negligent: (1) any finding that Thigpen was not negligent would actually conflict with the Federal Aviation Act ("the Act") and with regulations promulgated thereto; (2) the Act and its regulations have preempted the field of air safety and, since Thigpen violated federal air safety regulations, he is contributorily negligent as a matter of federal law; and (3) even under Alabama common law, Thigpen was contributorily negligent.

As outlined below, the court rejects Delta's first two preemption arguments, but finds that, under the undisputed facts, Thigpen was contributorily negligent as a matter of Alabama common law. Because contributory negligence operates as a complete bar to Thigpen's claim, the court need not reach the question of whether Captain Perkins breached any duty owed to Plaintiffs.

1. **Preemption**

Preemption is derived from the Supremacy Clause of Article VI of the Constitution,[9] although the Supreme Court cautions that courts should "'start with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress.'" *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (citation omitted)." "'The purpose of Congress is the ultimate touchstone' of preemption analysis." *Cipollone*, 505 U.S. at 516 (citation omitted). The preemption analysis begins with the presumption "that

---

[9] Article VI provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2.

Congress does not intend to supplant state law." *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995). Preemption can be either "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977). With respect to implicit preemption, state law is preempted if one of two conditions occurs: (1) the state law actually conflicts with federal law, *see Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n*, 461 U.S. 190, 204 (1983),[10] or (2) federal law so thoroughly occupies a legislative field "'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Fidelity Fed. Sav. & Loan Assn. v. de la Cuesta*, 458 U.S. 141, 153 (1982) (citation omitted).

Delta argues that the Act implicitly preempts Thigpen's state law claims in this case both because the state and federal laws are actually in conflict and because federal law preempts the field of air safety. (Doc. # 39.)[11] Delta's contention is based on the Third Circuit's decision in *Abdullah v. American Airlines, Inc.*, 181 F.3d 363, (3rd Cir. 1999), which held that federal air safety standards implicitly preempt any state regulation addressing air safety. *Abdullah*, 181 F.3d at 364-65. In *Abdullah*, the court found that, "[The Act] and relevant federal regulations establish complete and thorough safety standards for interstate and international air transportation and . . . these standards are not subject to supplementation by, or variation among, jurisdictions." *Id.*

Delta's preemption argument, however, runs afoul of the Eleventh Circuit's decision in *Public*

---

[10] "A conflict will be found 'where compliance with both the federal and state regulations is a physical impossibility.'" *Ray v. Atlantic Richfield Company*, 435 U.S. 151, 158 (1978) (citation omitted).

[11] As Plaintiffs point out, Delta makes no claim that Plaintiffs' cause of action for negligence is expressly preempted by the the Act. (Doc. # 42.)

*Health Trust of Dade County v. Lake Aircraft, Inc.*, 992 F.2d 291 (11th Cir. 1993). In *Public Health*, the plaintiff passenger sued the airplane manufacturer after the aircraft crashed and claimed that his seat was defective. 992 F.2d at 292. The defendant asserted that the Act preempted "the application of additional design standards arising under state law." *Id.* at 293. The Eleventh Circuit pointed out that the Act contains an *express* preemption provision and the court concluded that, under the doctrine of *expression unius est exclusio alterius*, "Congress did not intend to preempt state laws on matters unrelated to airline rates, routes and services." *Id.* at 295.[12] Although Delta admits that the *Public Health* decision conflicts with the Third Circuit's *Abdullah* decision and further recognizes that this Court has no authority to set aside the holding of *Public Health*, Delta nonetheless maintains that *Public Health* "is erroneous and warrants a second look." (Docs. # 39, 46.) The court will not question binding Eleventh Circuit law and therefore finds no preemption of the Plaintiffs' claims in this case.[13]

---

[12] The Airline Deregulation Act, presently codified at 49 U.S.C. § 41713, explicitly preempts any state law relating to "a price, route, or service of an air carrier. . . ." Section 41713 is located in the subpart of the Act relating to economic regulations.

[13] Delta also argues that, even if this court finds *Public Health* forecloses any consideration of field preemption, this court should still consider the possibility of conflict preemption. Delta cites a footnote from *Public Health* as evidence that the Eleventh Circuit intended to reject only field preemption under the Act, without ruling out conflict preemption. (Doc. # 39 (citing *Public Health*, 992 F.2d at 295 n.5).) What Delta fails to say, however, is that the court *did not conclude* that conflict preemption could exist under the Act. Rather, the court declined to address the issue, noting that "[s]ome question seems to exist about what should be concluded when a state regulation which lies outside the scope of an express preemption provision [] nonetheless actually clashes with federal law [] . . . *But the case we decide today presents no actual conflict.*" *Public Health*, 992 F.2d at 295 n.5 (emphasis added). Given that the Act contains an express preemption clause that does not authorize preemption of state laws regulating air safety, and taking into consideration the Eleventh Circuit's uncertainty about the viability of conflict preemption post-*Public Health*, the court is not inclined to test those waters. The reluctance to find conflict preemption in this case, however, does not prevent this court from finding, as it does, that Thigpen's decision to park the truck partially on the pavement was contributory negligence.

11

2. **Alabama Common Law**

Although the court rejects Delta's preemption arguments, it does find persuasive Delta's final argument that Thigpen was contributorily negligent as a matter of Alabama common law. To prove contributory negligence, Delta must demonstrate that Thigpen had knowledge of the danger and appreciated the danger under the circumstances, yet put himself in harm's way. *Salter v. United States*, 880 F.Supp. 1524, 1533 (M.D.Ala. 1995). One method of discharging this burden is to demonstrate that Thigpen violated a statute designed to prevent the harm that occurred. *Ridgeway v. CSX Transportation, Inc.*, 723 So. 2d 600, 606-07 (Ala. 1998) (finding automobile driver contributorily negligent as a matter of law since she violated state statute requiring her to stop, look, and listen before crossing railroad tracks and therefore entitling railroad to judgment as a matter of law); *Carroll v. Deaton, Inc.*, 555 So. 2d 140, 141 (Ala. 1989) ("[A] violation of a traffic ordinance or rule of the road constitutes negligence per se.")

Delta argues that federal aviation regulation 14 C.F.R. § 139.329 was designed to prevent the accident that occurred and that, because the FAA found the regulation was violated by the positioning of the Surface Pro truck in the taxiway safety area, Thigpen is contributorily negligent as a matter of Alabama common law. Delta points to the FAA's warning letter to BAA, which provides in part,

> At 10:35 A.M., September 27, 2000, a Delta Airlines MD-88 struck a maintenance vehicle parked in the safety area of taxiway A. Investigation of the matter revealed that maintenance equipment and personnel were in the safety area of taxiway A. *This situation is contrary to section 139.329(b) of Federal Aviation Regulation Part 139 . . . . All future construction and maintenance procedures must ensure that all equipment and personnel are not in the safety area to allow normal aircraft operations on the runway.*

12

(Doc. # 27, Ex. H (emphasis added).) Delta also notes that BAA Airfield Driver Rules and Regulations state, in bold, capital letters: **"AIRCRAFT SHALL HAVE THE RIGHT OF WAY OVER ALL VEHICLES."** (Thigpen Dep. Ex. 4, "§ 5.14 of Non-Movement Area.")

Thigpen argues that he was not negligent because he was not the driver of the Surface Pro vehicle and because his "supervision" of the Surface Pro contractors consisted only of pointing out which lines the contractors were to extract as he was told to do by BAA. (Doc. # 42 (citing Thigpen Dep. at 30, 68).) The court finds that the breadth of Thigpen's supervision of the contractors is immaterial, as is the question of who physically moved the vehicle. What *is* material is the question of who, with knowledge of the potential danger, directed the truck to be positioned partially on the pavement of the taxiway safety area in harm's way. There is no dispute that Thigpen instructed the contractors to move the truck and that, *although he had the authority to direct it to be moved entirely onto the grass, he did not.*

> Q. Did you instruct one of the contractors to move the truck?
> A. The driver.
> Q. Did you just call out to him?
> A. I said, "We need to move the truck because the plane is leaving the ramp area. We can get it over closer to the grass."

(Thigpen Dep. at 55:8-14; see also, 30:2-31:10.)

> Q. Now, you could have, if you had wanted to, told the driver to pull it all the way onto the grass, right?
> A. Yes.

(Thigpen Dep. at 66:17-20.) Even though Thigpen's *brief* emphasizes that the two left tires were on the grass, that cuts no ice at all given that Thigpen's *testimony* is clear that the two right tires were on the pavement in the taxiway safety area and that Delta's airplane struck the right side of the truck that was positioned on the pavement. (Thigpen Dep. at 31:8-10, 15; 61:13-15; 82:11-13; 83:6-7;

Thigpen Dep. Exs. 5-10, 12.)

Thigpen does not assert that someone else told him to park two wheels of the truck on the taxiway pavement, nor does he claim that he did not recognize the danger of parking two wheels on the taxiway pavement. Thigpen was trained on issues of safety, including taxiway safety, and he knew that airplanes always have the right-of-way on taxiways. (Thigpen Dep. at 19:13-21; 20:4-12; 24:19-23; 25:1-7; 27:17-18; Thigpen Dep. Ex. 4, Airfield Driver Rules and Regulations.) Under the undisputed facts, Thigpen was responsible for the truck being where it was at the time of the accident.

Thigpen also claims that he *technically* did not violate § 139.329 because Section (a) of the regulation permits "[l]imit[ed] access to movement areas and safety areas [for] those ground vehicles necessary for airport operations," and because BAA Airfield Driver Rules and Regulations, provide that, "[g]round vehicle operators having the need to operate within the safety areas, shall advise the Tower of their intentions to stop at a desired location within the safety areas." (Thigpen Dep. Ex. 4.)[14] The court is not persuaded by this argument. Whether or not Thigpen was permitted to be on, or stop in, the taxiway safety area is not the relevant question. Even if his presence in the area was authorized, and even if he advised the tower of his intention to stop there, Thigpen nonetheless chose to position the truck partially on the taxiway safety area when an airplane was approaching, thus putting the truck in harm's way.

---

[14] Thigpen also claims that he is not a "certificate holder" as contemplated by § 139.329 and therefore he cannot be held responsible for any violation. Because an airport is a corporate entity, however, it can only act through its agents. *See Warwick Development Co., Inc. v. GV Corporation*, 469 So. 2d 1270, 1276 (Ala. 1985) ("A corporation can act only through its officers and agents."). Thigpen cannot admit that BAA violated a regulation, but also proclaim that he, the employee who actually committed the act that purportedly caused the violation, did not technically violate it.

The facts indicate that, as a matter of law, Thigpen knew and appreciated the danger of being in harm's way of an approaching airplane, yet nonetheless positioned the Surface Pro truck partially on the pavement of the taxiway safety area where airplanes have the right of way. (Thigpen Dep. at 20:8-12; 25:3-7; 31:8-10, 15; 61:13-15; 82:11-13; 83:6-7; Thigpen Dep. Exs. 5-10, 12.) Under these facts, there can be no dispute that Thigpen was contributorily negligent.

### B.     Wantonness

In Alabama, wantonness falls into a different category than negligence:

> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. *Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury.* . . .
>
> Negligence is usually characterized as inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act which cannot exist without a purpose or design, a conscious or intentional act. Simple negligence is the inadvertent omission of duty; and *wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted.*

*Dorman v. Jackson*, 623 So. 2d 1056, 1058 (Ala. 1993) (internal citations and punctuation omitted) (emphasis original). Judgment as a matter of law is frequently granted on claims for wantonness. *Dorman*, 623 So. 2d at 1058 (affirming grant of summary judgment on wantonness claim in automobile accident case where defendant failed to see an oncoming car before turning in front of it); *Smith v. Davis*, 599 So. 2d 586, 588 (Ala. 1992) (affirming trial court's refusal to submit wantonness claim to jury in an automobile accident case where the defendant rear-ended the plaintiff); *South Central Bell Telephone Company v. Branum*, 568 So. 2d 795, 798 (Ala. 1990) (reversing trial court for failing to direct verdict in defendant's favor on wantonness claim in

15

automobile-pedestrian accident case where defendant's driver struck plaintiff while she was crossing the street); *Whitmore v. Burge*, 512 So. 2d 1320, 1327 (Ala. 1987) (affirming grant of summary judgment on wantonness claim in automobile accident case where defendant proceeded through intersection even though she saw the plaintiff and suspected that he would also proceed through at the same time); *Anderson v. Crouch*, 460 So. 2d 1337 (Ala. Civ. App. 1984) (affirming finding of trial court that there was not a scintilla of evidence to warrant submitting the issues of wantonness to the jury when an automobile driver, who failed to sound her horn, use her emergency brake, or swerve away, struck the pedestrian-plaintiff); *see also*, *Browder v. General Motors Corp.*, 991 F. Supp. 1402, 1408 (M.D. Ala. 1997) (appealing to Alabama's law on wantonness in determining whether to submit issue of wantonness in an automobile accident case to the jury or to grant summary judgment).

Under the undisputed facts of this case, the conduct of Delta's pilot was not wanton. As noted before, the court will accept that portion of Perkins' testimony addressed to his observations and actions on the day of the accident because Plaintiffs have not demonstrated a serious issue of fact as to Perkins' credibility. *Curl v. International Business Machines Corp.*, 517 F.2d 212, 213-214 (5th Cir. 1975). When Captain Perkins first saw the truck at a distance of about 300 yards, he slowed down and moved to the left of the yellow centerline, away from the truck. (Perkins Dep. at 58:12-17; 68:10-14, 21-23.) Perkins testified that he cannot see his wingtips in that aircraft, but that he believed he would clear the truck. (Perkins Dep. at 72:16-17; 73:12-15.)

Wantonness requires a purposeful and intentional act, with knowledge that acting or failing to act will cause injury. The testimony of the pilot indicates that he did not believe a collision would occur, (Perkins Dep. at 69:4-11; 73:2-4), and the Plaintiffs have not challenged the credibility of that

testimony. Under Alabama law, these undisputed facts are sufficient to overcome a claim of wantonness. *McGehee v. Harris*, 416 So. 2d 729, 732 (Ala. 1982) ("The mere 'possibility,' or 'chance,' that there 'might be' a collision does not rise to an awareness that injury 'would likely or probably result . . . .'") There is simply no evidence that Captain Perkins suspected that his airplane would strike the truck and therefore Delta is entitled to summary judgment on this claim.

### C.     Loss of Consortium

Because the court has determined that summary judgment is due to be granted in favor of Delta on the claims asserted by Thigpen, Delta is also entitled to summary judgment on the loss of consortium claim asserted by his wife, Veronica Thigpen. A loss of consortium claim is derivative, and if the spouse's underlying claim fails, so too must the consortium claim. *Davis v. Wal-Mart Stores, Inc.*, 64 F. Supp. 2d 1176, 1181 (M.D. Ala. 1999) (applying Alabama common law); *see also*, *Swartz v. United States Steel*, 293 Ala. 439, 304 So. 2d 881, 889 (Ala. 1974) (Faulkner, J., special concurrence) ("[W]here the husband's case has been terminated on the merits adversely to him, the wife's right to recover for loss of consortium is barred.")

### V.     Conclusion

For the reasons stated above, Defendant's motion for summary judgment is due to be granted. The court finds that no genuine issues of material fact remain for trial as to Plaintiffs' claims and that Defendant is entitled to judgment as a matter of law. A separate Final Judgment will be entered.

**DONE** and **ORDERED** this ___19th___ day of April, 2004.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE